NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-449

COMMONWEALTH

vs.

MARK A. GRISWOLD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from a District Court order dated March 8, 2024, denying his second motion to withdraw his plea. We reverse.

Background.  We summarize the undisputed facts.  On October 21, 2013, a Barnstable police officer responded to a call for a motorcycle accident.  While the officer was traveling to the incident, a dispatcher informed the officer that a witness reported that the defendant had fallen off his vehicle but had gotten back on and was traveling down the street.  Upon arrival, the officer saw the defendant struggling to keep his motorcycle upright.  When the officer stopped the defendant, the defendant had difficulty placing the motorcycle on its stand, dropped his

helmet on the ground, and almost fell over while picking it up. The officer asked the defendant if he was having trouble operating his motorcycle, and the defendant responded that he guessed it was "something mechanical" and said that he was "fine." When the officer asked the defendant for his license and registration, he produced his license but had to be reminded several times to produce his registration. The defendant initially had difficulty retrieving the registration from under the seat. After lifting the seat, he forgot why he had opened it. When the defendant handed his registration to the officer, he stated that he could not find his license. The officer reminded the defendant that the defendant had already provided the license.

The officer smelled a strong odor of alcohol coming from the defendant and perceived his eyes to be red, bloodshot, and glassy. The officer described the defendant as unsteady on his feet, and at one point the officer grabbed the defendant's shoulder to prevent him from falling. The defendant stated that he had had "a couple of drinks" and was on his way home from a friend's house. The officer told the defendant that he was concerned about the defendant's ability to safely operate his motorcycle, and the defendant agreed to take field sobriety tests. The defendant stated that he had a back injury but that it would not affect his ability to walk in a straight line. The

defendant first took the alphabet test and was able to say the letters correctly before concluding, "X, Y, M[,] Z." The defendant then took the nine-step walk and turn test, which he failed due to a failure to walk heel to toe. The officer arrested the defendant, who agreed to take a breathalyzer test. The test result showed a blood alcohol content (BAC) of 0.20 percent. The defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor (OUI), second offense, in violation of G. L. c. 90, § 24 (1) (a) (1), and operating a motor vehicle without a license in violation of G. L. c. 90, § 10.

On August 11, 2014, the defendant admitted to sufficient facts on the OUI charge and received a sentence of sixty days committed in the house of correction, suspended for two years, and was ordered to participate in a fourteen-day alcohol treatment program. The charge of operating a motor vehicle without a license was dismissed by agreement of the parties. On June 3, 2021, the defendant filed a motion to withdraw his plea pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), which the judge denied on August 4, 2021. On December 11, 2023, the defendant filed a second motion to withdraw plea. On February 27, the same judge held a nonevidentiary hearing on the motion and took the matter under

3

advisement.  On March 8, 2024, the judge denied the motion with a margin endorsement.[1]

Discussion.  "A motion for a new trial under Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), 'is the appropriate vehicle to attack the validity of a guilty plea or an admission to sufficient facts.'"  Commonwealth v. Hallinan, 491 Mass. 730, 744 (2023), quoting Bridgeman v. District Attorney for the Suffolk Dist., 476 Mass. 298, 316 (2017).  See Commonwealth v. Henry, 488 Mass. 484, 490 (2021) ("A motion to withdraw a guilty plea is treated as a motion for a new trial pursuant to Mass. R. Crim. P. 30 (b)" [citation omitted]).  "[A] judge may grant a motion for a new trial any time it appears that justice may not have been done."  Commonwealth v. Scott, 467 Mass. 336, 344 (2014).  We review the denial of a motion under Mass. R. Crim. P. 30 (b) for "abuse of discretion or significant error of law."  Hallinan, supra.

---

[1] On August 20, 2021, the defendant appealed the denial of his first motion to withdraw his plea.  On September 12, 2022, and on subsequent dates, we granted a stay of that appeal, pending the issuance of the Hallinan case, see Commonwealth v. Hallinan, 491 Mass. 730 (2023), and a second motion to withdraw guilty plea.  On April 24, 2024, following the defendant's timely appeal of the denial of his second motion, we consolidated the two appeals.  The propriety of the first order has not been briefed, and is deemed waived.  See Commonwealth v. Scott, 98 Mass. App. Ct. 843, 853 (2020).

4

When a defendant seeks to vacate a guilty plea due to government misconduct, "the defendant must show both that 'egregiously impermissible conduct . . . by government agents . . . antedated the entry of his [or her] plea' and that 'the misconduct [materially] influenced his [or her] decision to plead guilty.'" Scott, 467 Mass. at 346, quoting Ferrara v. United States, 456 F.3d 278, 290 (1st Cir. 2006). Defendants seeking to vacate a conviction after trial or a guilty plea, "and the evidence against whom included breath test results from an Alcotest 9510 device last calibrated and certified prior to April 18, 2019, are entitled to a conclusive presumption of egregious government misconduct."[2] Hallinan, 491 Mass. at 731.

This describes the defendant's case. Therefore, the sole question presented is whether the government's misconduct materially "influenced [the defendant's] decision to plead guilty." Hallinan, 491 Mass. at 731, quoting Scott, 467 Mass. at 346.

"These showings are inherently case specific." Commonwealth v. Crump, 105 Mass. App. Ct. 307, 312 (2025). A defendant must "demonstrate a reasonable probability that [the defendant] would not have pleaded guilty had [the defendant] known of [the government] misconduct." Hallinan, 491 Mass. at

---

[2] Any breath test results must be excluded from any subsequent trial. Hallinan, 491 Mass. at 755.

5

750.  "Establishing such a reasonable probability requires examining the totality of circumstances, guided by a number of specific factors."  Id.  Those factors include:

> "(1) whether evidence of the government misconduct could have detracted from the factual basis used to support the guilty plea, (2) whether the evidence could have been used to impeach a witness whose credibility may have been outcome-determinative, (3) whether the evidence is cumulative of other evidence already in the defendant's possession, (4) whether the evidence would have influenced counsel's recommendation as to whether to accept a particular plea offer, and (5) whether the value of the evidence was outweighed by the benefits of entering into the plea agreement."

Id., quoting Scott, 467 Mass. at 355-356.

The judge did not address the Scott-Ferrara factors in his decision, which consisted of a handwritten notation.[3]  Based on our review of the record, we conclude that it was a clear error of law to deny the defendant's motion.  The facts here are similar to those in Hallinan.  Like the defendant here, the defendant in Hallinan had red, glassy eyes, smelled of alcohol, and admitted to having had a few drinks.  Hallinan, `491 Mass. at 732.  The defendant in Hallinan appeared "dazed," id., while the officer noted that the defendant here appeared "confused."  Here, as in Hallinan, the defendant's breathalyzer result was the "crown jewel" in the prosecution's case against the

---

[3] In his March 8, 2024 order, the judge noted that he found that "there is sufficient evidence in the police report to support a conviction w/o the [b]reath test."

6

defendant. Id. at 750 (describing breathalyzer result of 0.23 percent BAC as "'the crown jewel'" -- the most inculpatory piece of evidence against the defendant"). The defendant had a 0.20 percent BAC result, which was two and one-half times the legal limit of .08 percent. See G. L. c. 90, § 24 (1) (a) (1).

Unlike the defendant in Hallinan, who failed to complete any field sobriety tests, see Hallinan, 491 Mass. at 732, the defendant here completed the alphabet test correctly up to "X, Y, M[,] Z," and the officer did not report that he had failed this test.

While the officer reported that the defendant failed the nine-step walk and turn test because he did not walk heel to toe, the defendant submitted medical records in support of his motion showing that he was evaluated at a hospital emergency department for severe leg and hip pain three months before his arrest. According to those records, the defendant "bent over at one point, and had trouble getting up due to the pain; tonight his leg just gave out." The medical records support the defendant's assertion in his affidavit that he "was suffering from a back and hip injury" at the time he was stopped by the police.

We conclude that the defendant has "demonstrate[d] a reasonable probability that he . . . would not have pleaded guilty had he . . . known of [the government] misconduct."

7

Hallinan, 491 Mass. at 750. While the breathalyzer result was not the only evidence of the defendant's impairment, the additional evidence was similar to the evidence in Hallinan and not overwhelming -- here, the defendant did not fail the alphabet test and a fact finder might have accepted the defendant's explanation that his back and hip injuries had interfered with his ability to perform the walk and turn test.

The defendant also submitted an affidavit from his plea counsel in which she stated that she believed that "the failed breathalyzer result was one of the significant factors behind the decision to dispose of the case rather than proceeding to trial" and that the "high test result . . . was an incriminating piece of evidence." The defendant stated in his affidavit that his attorney told him that the breathalyzer evidence "was damaging and that it would be tough to win the case." He asserted that he would not have pleaded guilty had he known about the misconduct and that his decision to plead guilty was based on his attorney's advice and on his belief that the breath test was admissible evidence.

Furthermore, "the disposition that the defendant received was not so favorable that the benefits of the plea outweighed the value of the evidence." Hallinan, 491 Mass. at 751. There

8

was no evidence that the Commonwealth offered a charge concession as part of the plea.[4]

Based on the record, we conclude that the judge erred in denying the defendant's second motion to withdraw his plea.

Accordingly, the order denying the defendant's second motion to withdraw his plea is reversed.  The case is remanded to the District Court for further proceedings.

<u>So ordered</u>.

By the Court (Sacks,
  Hershfang & Tan, JJ.[5]),

Paul Little

Clerk

Entered:   July 7, 2025.

---

[4] While the Commonwealth agreed to dismiss the operating without a license charge, the maximum penalty for a guilty finding on that charge carries only a fine.

[5] The panelists are listed in order of seniority.

9